IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAPTIST MEMORIAL HOSPITAL, INC.<br>6019 Walnut Grove Road<br>Memphis, Tennessee 38120<br><br>BAPTIST MEMORIAL HOSPITAL –<br>TIPTON<br>1995 Highway 51 South<br>Covington, TN 38019<br><br>BAPTIST MEMORIAL HOSPITAL –<br>UNION CITY<br>Russell & Bishop Streets<br>Union City, TN 38261<br><br>BAPTIST MEMORIAL HOSPITAL –<br>DESOTO<br>7601 Southcrest Parkway<br>Southaven, MS 38671<br><br>          Plaintiffs,<br>vs.<br><br>MICHAEL O. LEAVITT, Secretary<br>United States Department of Health<br>and Human Services<br>200 Independent Avenue, S.W.<br>Washington, D.C. 20201<br><br>          Defendant. | Civil Action No. _____ |

## COMPLAINT

The above-named Plaintiffs, by and through their undersigned counsel, state the following by way of their Complaint against Michael O. Leavitt, Secretary of the United States Department of Health and Human Services (the "Secretary").

Page -1-

## I. **INTRODUCTION**

1.  Plaintiffs (hereinafter referred to individually as a "Hospital" or collectively as the "Hospitals") consist of not-for-profit hospitals that participate in the Medicare and Medicaid programs. The Hospitals challenge a regulation issued by the Secretary related to Medicare payments to hospitals that serve "a significantly disproportionate number of low-income patients." 42 C.F.R. § 412.106 (eff. 01/20/00). The challenged regulation implements a provision of the Medicare statute that authorizes additional Medicare payments to "disproportionate share hospitals," known as "DSH" payments. Under the statute, the term "low-income patients" includes patients "eligible for" Medicaid. In computing a hospital's low-income patient percentage for the time period before January 20, 2000, the Secretary excluded hospital days attributable to patients "eligible for" Medicaid if the patients belonged to an expansion population and received benefits under a Medicaid state plan as a result of waiver of certain Medicaid requirements known as a "Section 1115 Waiver." The Secretary's regulation, to the extent it precludes Medicare disproportionate share payments based on days attributable to Medicaid-eligible expansion waiver populations before January 20, 2000, but not after, is inconsistent with the plain and unambiguous wording of the governing Medicare statute, inconsistent with clear congressional intent, patently unreasonable, violative of equal protection guarantees, arbitrary and capricious, and otherwise contrary to law.

## II. JURISDICTION AND VENUE

2. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (the "Medicare statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

3. This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1).

4. Pursuant to 42 U.S.C. § 1395oo(f)(1), venue for a group such as this is proper in the United States District Court for the District of Columbia.

## III. PARTIES

5. Except as otherwise indicated below, plaintiff Hospitals are hospitals located in the State of Tennessee that served a disproportionate share of low-income patients prior to and including the calendar year 2000.

6. Plaintiff Baptist Memorial Hospital, Inc. (formerly d/b/a Baptist Memorial Hospital Medical Center – East; currently d/b/a Baptist Memorial Hospital – Memphis), 6019 Walnut Grove Road, Memphis, Tennessee, is an inpatient hospital assigned Medicare provider number 44-0048.

7. Plaintiff Baptist Memorial Hospital – Tipton, 1995 Highway 51 South, Covington, Tennessee, is an inpatient hospital assigned Medicare provider number 44-0131.

8. Plaintiff Baptist Memorial Hospital – Union City, Russell & Bishop Streets, Union City, Tennessee, is an inpatient hospital assigned Medicare provider number 44-0130.

9. Plaintiff Baptist Memorial Hospital – DeSoto, 7601 Southcrest Parkway, Southaven, Mississippi, is an inpatient hospital assigned Medicare provider number 25-0141.

10. Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services, the federal department responsible for the administration of the Medicare and Medicaid programs.

## IV. **THE MEDICARE PROGRAM**

11. Congress enacted the Medicare Program (Title XVIII of the Social Security Act) in 1965. As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65. Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

12. Among the benefits covered by Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis. 42 U.S.C. § 1395f(b). Effective for cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most hospitals, including the Hospitals, for inpatient operating costs. 42 U.S.C. § 1395ww(d). Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

13. The Secretary has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare & Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS"). The Secretary, through CMS, contracted out many of his audit and payment functions under Medicare to organizations (usually insurance companies) known as fiscal intermediaries.

14. At the close of a fiscal year, a provider of services must submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate

share of those costs to be apportioned to Medicare. 42 C.F.R. §§ 413.20(b), 413.24(f). The intermediary is required to analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

15. A provider dissatisfied with its intermediary's determination may file an appeal with an administrative body called the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the NPR. 42 U.S.C. § 1395oo(a). Providers under common ownership or control must appeal issues involving a common question of fact or interpretation of law, regulations, of CMS Rulings as a group. 42 C.F.R. § 405.1837. Such groups are generally referred to as common-issue/related-party or "CIRP" group appeals.

16. A provider or provider group that has filed an appeal with the PRRB may ask the PRRB to determine that it lacks the authority to decide "a question of law or regulations relevant to the matters in controversy." 42 U.S.C. § 1395oo(f)(1). Such a request is generally known as a request for expedited judicial review ("EJR").

17. The Board must issue an EJR determination within 30 days of receiving an EJR request and accompanying documents. 42 U.S.C. § 1395oo(f)(1).

18. If the PRRB determines that it lacks the authority to decide the issue raised in an EJR petition, a provider or provider group may obtain judicial review of that issue by filing a lawsuit within 60 days of receipt of the PRRB's EJR determination or, if the Board fails to render such determination within 30 days, then a provider may bring a civil action within 60 days after the expiration of the 30-day period. 42 U.S.C. § 1395oo(f)(1).

19. The PRRB's EJR determination is considered a final decision and is not subject to review by the Secretary. 42 U.S.C. § 1395oo(f)(1).

## V. **THE MEDICAID PROGRAM**

20. Congress enacted the Title XIX of the Social Security Act in 1965, creating a program providing medical assistance to low income populations. The Title XIX medical assistance program is popularly known as Medicaid. Medicaid is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.

21. States participating in the Medicaid program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs. *See* 42 U.S.C. § 1396d. Nevertheless, all states must furnish certain minimum benefits under their Medicaid program, including "inpatient hospital services." *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(1).

22. States have some flexibility in establishing payment rates for hospital services under their Medicaid programs. 42 U.S.C. § 1396a(a)(13)(A).

23. States that participate in the Medicaid program are required to develop a state Plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C. § 1396. The Plan must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. § 1396a.

24. The State of Tennessee, at all relevant times referred to in this complaint, had a valid state plan approved by the Secretary.

## VI. **DEMONSTRATION WAIVER PROJECTS**

25. Some states provide medical assistance (Medicaid) under a demonstration project referred to as a Section 1115 Waiver. *See* Social Security Act ("SSA") § 1115, codified at 42 U.S.C. § 1315, ("Section 1115 Waiver"). Under a Section 1115 Waiver, the Secretary waives

some of the requirements that a state Plan must meet as set forth in 42 U.S.C. § 1396a, such as freedom of choice, comparability, and statewide applicability. The purpose of the Section 1115 Waiver is to encourage states to develop innovative and efficient modes of delivering medical assistance through experimental projects.

26. When it enacted the Section 1115 Waiver provision in 1962, Congress mandated that Section 1115 Waiver programs be regarded as programs approved under state Plans. The statute provides that:

> The costs of such project which would not otherwise be included as expenditures under section 3, 455, 1003, 1403, 1603, or 1903 as the case may be, and which are not included as part of the costs of projects under section 1110, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such title.

27. In some cases, Section 1115 Waivers cover patients who otherwise could have been made eligible for Medicaid under the state Plan requirements set forth in 42 U.S.C. § 1396a. In other cases, the Section 1115 Waiver may provide for medical assistance to expanded eligibility populations of individuals who could not otherwise be made eligible for traditional Medicaid ("expansion waiver populations") under existing state Plan requirements.

28. CMS has acknowledged that one purpose of the Section 1115 Waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been made eligible for traditional Medicaid. *See* Interim Final Rule, 65 Fed. Reg. 3136 (Jan. 20, 2000) (the "Interim Final Rule"). CMS also acknowledged that the statute allows for expansion populations to be treated as Medicaid beneficiaries. *Id.*

29. The State of Tennessee had a valid Section 1115 Waiver in place during the relevant fiscal years referenced in this Complaint.

## VII. THE MEDICARE DISPROPORTIONATE SHARE PAYMENT ADJUSTMENT

30. When Congress enacted Medicare PPS in 1983, it authorized the Secretary to provide an adjustment to PPS payments for hospitals that served a disproportionate share of low income patients. *See* Social Security Amendments of 1983, Pub. L. No. 98-21 § 601(e), codified at 42 U.S.C. § 1395ww(d)(5)(C)(i) (1983). The Secretary, however, declined to make such an adjustment. 48 Fed. Reg. 39,783 (1983).

31. In response to the Secretary's failure to provide a disproportionate share adjustment, Congress directed the Secretary, by December 31, 1984, to develop and publish a disproportionate share definition and identify hospitals that met that definition. Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 2315(h), codified at 42 U.S.C. § 1395ww. By July 1985, the Secretary had not yet complied with this congressional mandate, which resulted in a court order directing the Secretary to implement the disproportionate share statutory provision. *See Samaritan Health Ctr v. Bowen*, 636 F.Supp. 503 (D.D.C. 1985). In 1986, after the Secretary issued extremely narrow disproportionate share criteria (50 Fed. Reg. 53,398-53,400 (1985)), Congress amended the Social Security Act to prescribe a statutory definition of disproportionate share hospitals.

32. As amended, the Medicare statute directs the Secretary to furnish an add-on payment for PPS hospitals, which serve "a significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Hospitals qualify under this standard if their "disproportionate patient percentage" exceeds certain thresholds, and the amount of the add-on disproportionate share payment for qualifying hospitals depends on the extent to which their disproportionate patient percentage exceeds the thresholds. 42 U.S.C. § 1395ww(d)(5)(F)(v), (vii). The Medicare statute defines "disproportionate patient percentage" as "the sum of –

> (I) the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A of this title and were entitled to supplemental security income benefits (excluding any State supplementation) under Title XVI of this Act, and the denominator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A of this title, and
>
> (II) the fraction (expressed as a percentage), the numerator of which is <u>the number of the hospital's patient days for such period which consist of **patients who (for such days) were eligible for medical assistance under a State plan approved under Title XIX**</u>, but who were not entitled to benefits under Part A of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi) (emphasis added).

33. A larger number of Title XIX days means a larger DSH adjustment for the hospital.

34. On May 6, 1986, the Secretary issued an interim final regulation to implement the statutory disproportionate share add-on payment (42 C.F.R. § 412.106). <u>See</u> 52 Fed. Reg. 16,772, 16,777 (May 6, 1986); 51 Fed. Reg. 31,454, 31,460 (Sept. 3, 1986).

### VIII. <u>CMS' EXCLUSION OF § 1115 EXPANDED WAIVER DAYS IN THE DSH MEDICAID FRACTION</u>

35. The Secretary has interpreted the Medicare statute to exclude the expanded waiver days in the Medicaid fraction of the DSH calculation, and in fact has issued numerous binding policy statements and memoranda prohibiting providers from claiming, and intermediaries from counting, expanded waiver days in the DSH calculation. The Secretary issued an Interim Final Rule 65 Fed. Reg. 3136 on January 20, 2000, to specifically address CMS's exclusion of Section 1115 expanded waiver days from the DSH calculation:

> Under current policy, hospitals were to include in the Medicare DSH calculation only those days for populations under the section 1115 waiver who were or could

have been made eligible under a State plan. Patient days of the expanded eligibility groups, however, were not to be included in the Medicare DSH calculation.

*Id.*, at Section I.B.

36. In the Interim Final Rule, and in Final Rule 65 Fed. Reg. 47065 (Aug. 1, 2000), CMS reversed its position, promulgating a regulation that permitted inclusion of expanded waiver days in the Medicaid fraction for discharges on or after January 20, 2000, but CMS expressly continued to prohibit their inclusion for discharges prior to January 20, 2000. The regulatory provision, 42 C.F.R. § 412.106(b)(4)(ii), provides:

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(I) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

37. Before promulgating the above regulation, CMS issued policy statements prohibiting the inclusion of expanded waiver days in the Medicaid fraction. CMS issued Transmittal No. A-99-62, December 1999, to reiterate its interpretation of the Medicaid fraction, and to hold certain providers harmless if they erroneously included allowable days under certain circumstances. In the transmittal, CMS identified "ineligible waiver or demonstration population days" as days that could not be included in the DSH calculation.

## IX. FACTS SPECIFIC TO THE HOSPITALS

38. In computing the Hospitals' Medicare disproportionate payment percentages for the fiscal years identified in Exhibit "A" (attached), the Hospitals' Medicare intermediary, Riverbend Government Benefits Administrator (the "Intermediary") disallowed those inpatient days that were part of an expanded waiver group eligible for medical assistance under the stat plan as modified by the Section 1115 Waiver. In contrast, beginning January 20, 2000, the Hospitals' fiscal intermediary, at CMS's direction, has included all inpatient days attributable to

the expanded waiver group in the DSH calculation for each of the Hospitals. The exclusion of these Medicaid days prior to January 20, 2000 unlawfully reduced the Hospitals' respective Medicare disproportionate patient percentages.

39. Pursuant to PRRB instructions, the Hospitals timely filed four CIRP group appeals with the PRRB based on the fiscal years at issue as identified in Exhibit "A." In each of those appeals, the Hospitals challenged CMS's policy under which each Hospital's disproportionate share percentages was calculated by using a formula that excluded Section 1115 Waiver days from the Medicaid fraction of the DSH calculation. Three of the Hospitals sought to have all days that were excluded by the Intermediary included as Medicaid patient days in computing their respective Medicare disproportionate share percentages. One of the Hospitals, Baptist Memorial Hospital – Union City, did not meet the patient day threshold to be eligible for a DSH adjustment without the inclusion of Section 1115 Waiver days, and therefore was not in a position to submit other Medicaid days (since the tally of the other patient days, taken together, were insufficient to allow for a DSH adjustment).

40. By letter dated December 9, 2005, the Plaintiff hospitals filed a request for EJR with the PRRB for all four CIRP groups. Exhibit "B" (attached).

41. By separate letters dated January 4, 2006, the PRRB granted the Hospitals' request for EJR for all four CIRP groups. Counsel for the Hospitals received notice of the Board's decision on January 9, 2006. Exhibit "C" (attached).

42. The Hospitals timely filed this suit within 60 days of receipt of the PRRB's grant of EJR. Thus, this case is ripe for judicial review, and the Court has jurisdiction over this case, under 42 U.S.C. § 1395oo(f)(1).

## X. INVALIDITY OF THE SECRETARY'S CONSTRUCTION OF THE DISPROPORTIONATE SHARE PERCENTAGE

43. The Secretary's construction of 42 U.S.C. § 1395ww(d)(5)(F(vi)(II) (the Medicaid Proxy of the DSH calculation) is unlawful because it conflicts with congressional intent, as reflected in the statute's plain meaning and its legislative history.

44. Under the Medicare statute, so long as a patient is eligible for medical assistance under a Title XIX approved state plan (Medicaid), for a particular day for which the patient receives inpatient hospital services, that patient day must be counted as a Medicaid day for purposes of the Medicare disproportionate share percentage, irrespective of whether the state plan operates under a Section 1115 Waiver and irrespective of a patient's membership in the expansion waiver population. The key under the statute is the patient's eligibility for Medicaid. The statute is clear and unambiguous and does not admit of the Secretary's construction. Likewise, the legislative history demonstrates the clear meaning of the statute, which conflicts with the Secretary's construction.

45. CMS approved Tennessee's state plan under Title XIX as modified pursuant to the Section 1115 Waiver.

46. CMS and the Secretary concede that the Section 1115 Waiver program in Tennessee is a state Plan approved under Title XIX for purposes of the Medicare DSH adjustment because the current policy of CMS, by way of formal regulation and official pronouncement, as outlined above, is to include Section 1115 Waiver days in the DSH calculation starting in 2000 and going forward.

47. Neither CMS nor the Secretary has ever offered a valid reason for why providers, with properly pending appeals or open cost report years, should not have Section 1115 Waiver days included in their DSH calculations for years prior to 2000.

48. The Secretary's policy, insofar as it allows Section 1115 Waiver days to be included in the DSH calculation, is statutorily correct.

49. Even assuming arguendo that Congress's intent cannot be derived from the statutory language and the legislative history, the Secretary's construction is impermissible and unlawful because it conflicts with congressional intent. The purpose of the Medicare disproportionate share adjustment is to compensate hospitals for the additional cost incurred to furnish care to low-income patients. The Medicaid portion of the disproportionate share percentage was adopted as a proxy measure for all low-income inpatients served by a hospital. A proxy was used to avoid burdening the hospitals with having to track the income of every patient. The Secretary's policy to exclude Section 1115 Waiver days prior to January 20, 2000 defeats Congress's purpose in establishing Medicaid eligibility as a proxy for demonstrating a hospital's service to low-income patients.

50. The Secretary's position is unlawful. The Plaintiffs' Medicare fiscal intermediary wrongfully disallowed Section 1115 Waiver days for the cost report years that are the subject of this appeal.

51. The Plaintiffs' Medicare fiscal intermediary also wrongfully prevented one of the Hospitals, Baptist Memorial Hospital – Union City, from receiving any DSH adjustment at all, because without the inclusion of Section 1115 Waiver days, this hospital could not meet the requisite DSH percentage to qualify for an adjustment.

52. The Medicare statute requires the Secretary, CMS, and intermediaries to include Section 1115 Waiver days in the DSH calculation.

53. The Intermediary's disallowance of Section 1115 Waiver days based on instructions from CMS is a direct violation of the Medicare statute and is also arbitrary, capricious, unreasonable, and otherwise contrary to law.

54. The Secretary's construction of the DSH statute is unlawful because his interpretation causes the statute to violate the equal protection clause of the United States Constitution. It establishes irrational distinctions between hospitals' expansion waiver populations discharged before January 20, 2000 and those expansion waiver populations discharged after January 20, 2000.

## XI.  REQUESTED RELIEF

**WHEREFORE,** Plaintiffs request relief as follows:

(1) A declaration by the Court that the Secretary's regulation, 42 C.F.R. § 412.106(b)(4)(ii) is unlawful insofar as it excludes Section 1115 Waiver days from the numerator of the DSH calculation prior to January 20, 2000, in contravention of the plain meaning of 42 U.S.C. § 1395ww(d)(5)(F)(vi);

(2) A declaration by the Court that the portion of 42 C.F.R. § 412.106(b)(4)(ii) that excludes expansion waiver populations from the DSH calculation prior to January 20, 2000 is arbitrary, capricious, unreasonable, unlawful, and invalid;

(3) For those Plaintiff Hospitals that qualified for a DSH payment, but had their Section 1115 Waiver days excluded by the Intermediary, an order requiring the Secretary, within ninety days of receipt of the Hospitals' documentation, (i) to recalculate the Hospitals' Medicare disproportionate patient percentage for the fiscal years in Exhibit "A" based on the foregoing declarations and based upon information to be submitted by the Hospitals with respect to the all patient days for which a patient was eligible for medical assistance pursuant to a state Plan

approved under Title XIX by virtue of a Section 1115 Waiver, and (ii) to pay the Hospitals the additional amounts due under the resulting DSH recalculation, plus interest in accordance with 42 U.S.C. § 1395oo(f)(2);

(4) For Plaintiff Hospital Baptist Memorial Hospital – Union City, an order requiring the Secretary, within ninety days of receipt of the Hospitals' documentation, (i) to calculate the Hospital's Medicare disproportionate patient percentage for the fiscal years in Exhibit "A" based on the foregoing declarations and based upon information to be submitted by the Hospital with respect to all patient days for which a patient was eligible for medical assistance pursuant to a state Plan approved under Title XIX including Medicaid days, including the Section 1115 Waiver days, and (ii) to pay the Hospital the total amount due under the resulting DSH calculation, plus interest in accordance with 42 U.S.C. § 1395oo(f)(2);

(5) An order prohibiting the Secretary from issuing payment via the administrative reopening process, and requiring the Secretary to issue payment of amounts due to each of the Plaintiff Hospitals via a notice of implementation of judgment.

(6) An order requiring the Secretary to submit for the Court's approval instructions to the Hospitals' Medicare fiscal intermediary for the calculation of the disproportionate share adjustments in accordance with law and decree of the Court;

(7) An order requiring the Secretary to submit for the Hospitals' review and approval the resulting DSH calculations and underlying workpapers at least five (5) business days prior to the date of payment.

(8) A declaration that this Court shall retain jurisdiction in this matter until the Secretary's calculation of the Hospitals' Medicare disproportionate patient percentages and subsequent payment to the Hospitals of the amounts due is complete;

(9) Attorney fees and costs of suit incurred by the Hospitals as permitted by law; and

(10) Such other relief as this Court deems just and appropriate.

DATED: March 9, 2006

                                        Respectfully submitted,

                                        QUAGLIANO & SEEGER, P.C.

                                        */s/*

                                        Julie Quagliano, DC Bar No. 393428
                                        Michael C. Zisa, DC Bar No. 467724
                                        2620 P Street, N.W.
                                        Washington, D.C. 20007
                                        Phone: (202) 822-8838
                                        Fax: (202) 822-6982
                                        Email: quagliano@quagseeg.com
                                                       zisa@quagseeg.com

Of Counsel:

Sanford E. Pitler
Kelly A. Thomas
Bennett Bigelow & Leedom, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
Phone: (206) 622-5511
Fax: (206) 622-8986

w:\wdclient\1789\00111\mm601466.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAPTIST MEMORIAL HOSPITAL, INC., et al., <br><br> Plaintiffs, <br> vs. <br><br> MICHAEL O. LEAVITT, Secretary United States Department of Health and Human Services, <br><br> Defendant. | Civil Action No. _____ |

### CERTIFICATE UNDER LCvR7.1

Plaintiffs' counsel of record certify that each of the Plaintiff Hospitals are non-profit 501(c)(3) corporations owned and operated by Baptist Memorial Health Care Corporation ("BMHCC"). Plaintiffs' counsel of record certify further that to the best of their knowledge and belief, BMHCC has no outstanding securities in the hands of the public.

These representations are made in order that judges in this court may determine the need for recusal.

DATED: March 9, 2006

                                             Respectfully submitted,

                                             QUAGLIANO & SEEGER, P.C.

                                             Julie Quagliano, DC Bar No. 398428
                                             Michael C. Zisa, DC Bar No. 467724
                                             2620 P Street, N.W.
                                             Washington, D.C. 20007
                                             Phone: (202) 822-8838
                                             Fax: (202) 822-6982
                                             Email: quagliano@quagseeg.com

zisa@quagseeg.com

Of Counsel:

Sanford E. Pitler
Kelly A. Thomas
Bennett Bigelow & Leedom, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
Phone: (206) 622-5511
Fax: (206) 622-8986


w:\wdclient\1789\00111\mm605579.doc