

Bennett Bigelow & Leedom, P.S.

Law Offices

Sanford E. Pitler
Attorney
pitler@bbllaw.com

December 9, 2005

**VIA FEDERAL EXPRESS**

Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:   BMH DSH § 1115 Waiver Days Group Appeals
      PRRB Case Nos.: 00-3588G, 05-0545G, 05-0544G, 06-0220G
      Lead Fiscal Intermediary: Riverbend Government Benefits Administrator
      **Closure of Group Appeals**
      **Submission of Jurisdictional Documents**
      **Requests for Expedited Judicial Review**

Dear Ms Cochran:

The law firm of Bennett Bigelow & Leedom, P.S., is the group representative for the four above-referenced group appeals, collectively known as the "BMH DSH § 1115 Waiver Days Group Appeals." By this letter, we hereby close each of these groups. Enclosed with this letter is the jurisdictional documentation for the providers' fiscal years corresponding to each of the four groups (see the four accompanying yellow binders). The jurisdictional documentation in each binder is organized according to the Provider Reimbursement Review Board (the "Board") Policies and Procedures for Pursuing an Appeal.

In addition, pursuant to Section 1878 (f)(1) of the Social Security Act (the "Act"), the participant providers ("Hospitals" or "Providers") in each group hereby request expedited judicial review ("EJR"). As discussed in Section II below, EJR should be granted because each participant in these group appeals challenge the legality of a regulation, 42 C.F.R. § 412.106(b)(4)(ii), by which the Secretary of Health and Human Services (the "Secretary") excludes Section 1115 expanded waiver days from the Medicaid days portion of the Disproportionate Share ("DSH") calculation for discharges prior to January 20, 2000. Such exclusion violates the Medicare DSH statute, 42 U.S.C. § 1395ww(d), and EJR should be granted. The Board previously granted EJR on the Section 1115 Waiver Days issue for three groups of Oregon providers, PRRB Case Nos. 00-3891G, 02-2141G, and 04-0224G. Enclosed with this letter is a copy of the Board's letters granting EJR for the three Oregon groups.

Ms. Suzanne Cochran
December 9, 2005
Page 2

## I. CLOSURE OF GROUP APPEALS

Baptist established these four group appeals in accordance with 42 U.S.C. § 1395oo and 42 C.F.R. § 405.1837 and § 405.1841. **Attachment A** of the jurisdictional binder corresponding to each group for contains copies of the relevant Hearing Request and Board Acknowledgment. Each participant in these group appeals challenges the determination made by its fiscal intermediary ("Intermediary") regarding the disproportionate share adjustment. The lead intermediary in this case is Riverbend Government Benefits Administrator because it is the intermediary for all the provider fiscal years in these group appeals.

For each group appeal binder, the Schedule of Providers is at **Attachment B**. Letters of representation appointing Bennett Bigelow & Leedom, P.S. to act on behalf of the named Providers in this action are included at **Attachment C**. The jurisdictional documents follow at **Attachment D**. The jurisdictional documents consist of final determinations, original hearing requests, audit adjustments (or the basis for self-disallowance), and transfer/add letters. The documents are organized in five sets of exhibits, one set for each hospital fiscal year in the group. Each set has been organized with Tabs A, B, D, E, and G, which represent the following:

- Tab A: <u>NPRs</u>

- Tab B: <u>Original Requests for Hearing</u>

- Tab D: <u>Audit Adjustment Reports.</u> The Audit Adjustment Reports are attached for audit adjustment numbers referenced in the Schedule of Providers. These Audit Adjustment Reports produced by each Hospital's Intermediary demonstrate that the specific adjustments made by the Intermediary relate to the number of Medicaid-eligible patient days that should be included in the Hospital's calculation of its Medicare DSH adjustment. Because the decision in *Bethesda Hospital Association et. al. v. Bowen,* 108 S.Ct. 1255(1988) applies to this challenge to the legality of the Secretary's regulation, the hospital fiscal years without audit adjustments do not require audit adjustment reports.

- Tab E: <u>Estimated Reimbursement Calculation</u>. This calculation represents an estimate of the amount of impacted reimbursement relating to the Intermediary's exclusion of Section 1115 days in the DSH computation. The calculation is based on the estimated number of Section 1115 waiver days that should be included in the Providers' DSH computation.

- Tab G: <u>Transfer/Add Letters</u> (if transferred from an existing appeal)

Ms. Suzanne Cochran
December 9, 2005
Page 3

As shown in each Schedule of Providers, each identified fiscal year was added to the group appeal within 180 days of an original or revised Notice of Program Reimbursement. The amount in controversy is, in the aggregate, more than $50,000 for each separate group appeal.

## II.     REQUEST FOR EJR

The Providers in each group hereby request EJR, which is appropriate and required in these cases. These group appeals challenge as violative of the Medicare disproportionate share ("DSH") statute, the Secretary's regulation at 42 C.F.R. § 412.106(b)(4)(ii), which reflects numerous policy statements, by which the Secretary excluded from the DSH Medicaid-eligible day count prior to January 20, 2000 all expanded Section 1115 waiver days. The Board lacks authority to invalidate the Secretary's regulation, the intermediary action mandated by the regulation, and the Secretary's announced instructions. The appropriateness of EJR in these cases is discussed below.

### A.     The Disproportionate Share Adjustment

Pursuant to the Comprehensive Omnibus Reconciliation Act of 1985 ("COBRA"), Congress created an adjustment to Prospective Payment ("PPS") rates for hospitals serving a "significantly disproportionate number of low income patients." 42 U.S.C. §1395ww(d)(5)(F). This DSH adjustment requires the Secretary to adjust PPS payments for hospitals that provide in-patient services to a disproportionate share of low-income patients. The statute, 42 U.S.C. §1395ww(d)(5)(F), provides for two proxies as measures of the volume of low-income patients served by a hospital: (1) the percentage of total Medicare inpatient days provided to low-income Medicare patients (i.e., those patients entitled to supplemental security income under Title XVI of the Social Security Act) ("Medicare fraction"); and (2) the percentage of total hospital days provided to "patients who (for such days) were eligible for medical assistance under a state Plan approved under [the Medicaid program]" ("Medicaid fraction"). The sum of these two fractions constitutes the individual hospital's disproportionate patient percentage.

This appeal concerns the Secretary's interpretation of the Medicaid fraction. Congress enacted the DSH adjustment in 1986 and codified it at 42 U.S.C. §1395ww(d)(5)(F)(vi) in 1986. Years after enactment, the Secretary promulgated a regulation, interpreting the Medicaid fraction as not including inpatient days attributed to section 1115 expanded waiver days, for discharges prior to January 20, 2000. 42 C.F.R. §412.106(b)(4). The Providers' group appeals challenge the validity of the regulation and the Secretary's statutory interpretation on which it is based. As mandated by the Medicare statute and congressional intent, the Medicaid fraction must include these expanded waiver days prior to January 20, 2000.

Ms. Suzanne Cochran
December 9, 2005
Page 4

**B.   Section 1115 Expansion Waivers**

Some states provide medical assistance (Medicaid) under a demonstration project referred to as a section 1115 waiver. *See* Social Security Act ("SSA") § 1115. Under such waiver, the federal government waives certain Medicaid requirements in SSA § 1902 (such as freedom of choice, comparability, and statewide applicability) in order to implement certain experimental or demonstration projects under the state plan. *Id.*

In enacting the Section 1115 waiver provision, Congress mandated that Section 1115 programs be regarded as programs approved under State plans. The statute provides that:

> The costs of such project which would not otherwise be included as expenditures under section 3, 455, 1003, 1403, 1603, or 1903 as the case may be, and which are not included as part of the costs of projects under section 1110, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such title.

SSA § 1115(a)(2)(A).

In some cases, Section 1115 waivers cover patients that otherwise could have been made eligible for Medicaid under the State plan. In other cases, the Section 1115 waiver may provide for Title XIX medical assistance to expanded eligibility populations of low income individuals who would not otherwise be eligible for Medicaid (these populations are known as "low income expansion populations" and the inpatient days attributed to their care are known as "expanded waiver days"). CMS has acknowledged that one purpose of the Section 1115 waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been made eligible for Medicaid. *See* Interim Final Rule, 65 FR 3136, Jan. 20, 2000 (the "Interim Final Rule"). CMS has also stated that the statute allows for the expansion populations to be treated as Medicaid beneficiaries. *Id.* The Provider groups contend that the Medicare statute and congressional intent require that these days be included in the Medicaid fraction portion of the DSH calculation.

**C.   CMS' Unlawful Preclusion of Section 1115 Expanded Waiver Days in the DSH Medicaid Fraction**

The Secretary has interpreted the Medicare statute as precluding inclusion of the expanded waiver days in the Medicaid fraction of the DSH calculation, and has issued binding policy statements and memoranda prohibiting providers from claming, and intermediaries from counting, expanded waiver days in the DSH calculation. For example, the Secretary issued Interim Final Rule 65 FR 3136 on Jan. 20, 2000 (attached) to specifically address the prohibition

Ms. Suzanne Cochran
December 9, 2005
Page 5

against inclusion of Section 1115 expanded waiver days in the DSH calculation. The Secretary clearly stated through his agent CMS:

> Under current policy, hospitals were to include in the Medicare DSH calculation only those days for populations under the section 1115 waiver who were or could have been made eligible under a State plan. Patient days of the expanded eligibility groups, however, were not to be included in the Medicare DSH calculation.

*Id.*, at Section I.B.

Moreover, with that Interim Final Rule, and with Final Rule 65 FR 47054 (Aug. 1, 2000) (attached), CMS promulgated a regulation that permitted inclusion of expanded waiver days in the Medicaid fraction for discharges on or after January 20, 2000, but expressly prohibited their inclusion for discharges **prior** to January 20, 2000. The regulatory provision, 42 C.F.R. § 412.106(b)(4)(ii) (attached), provides:

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(i) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

The Secretary's interpretation of the Medicare DSH statute as evidenced in the promulgation of 42 C.F.R. § 412.106(b)(4)(ii) and numerous policy statements, violates the Medicare statute and congressional intent and is therefore invalid.

D. **EJR is Appropriate Because the Board Has No Authority To Decide Issues of Governing Law, Regulation, or CMS Policy Statements**

Under § 1878(f)(1) of the Social Security Act (42 U.S.C. § 1395oo(f)(1)), the Board must grant EJR if it lacks the authority to decide a question of "law, regulation, or CMS Ruling" raised by a provider. *See also*, 42 C.F.R. § 405.1842; PRM-I § 2920.3; and Board Instructions Part I.E.

Here, the Hospitals challenge the validity of 42 C.F.R. § 412.106(b)(4)(ii) and the Secretary's interpretation of the Medicare DSH statute, 42 U.S.C. § 1395ww(d)(5), to exclude Section 1115 expanded waiver days in the DSH calculation. The Hospitals seek to invalidate the Secretary's regulation and mandatory policy issuances that exclude such days for discharges prior to January 20, 2000. The issue in these four group appeals reflects the Provider groups' challenge to a CMS regulation and binding policy statement:

Ms. Suzanne Cochran
December 9, 2005
Page 6

Whether the Intermediary's determination of DSH eligibility and/or the DSH adjustment, as required by the Health Care Financing Administration's ("HCFA") [now CMS] unlawful interpretation of the DSH statute 42 U.S.C. § 1395ww(d)(5)(f), to exclude [expanded] Section 1115 waiver days in the Medicaid days portion of the DSH calculation for discharges prior to January 20, 2000 [promulgated as regulation 42 C.F.R. § 412.106(b)(4)(ii)], violates the DSH statute.

Because the legal issue presented in this appeal concerns the validity under the Medicare DSH statute of a regulation and its underlying policy, the Board has no authority to provide the ruling and relief sought. Therefore, the Board must grant the Provider groups' request for EJR.

### E. Factual Issues

This appeal involves a legal issue – the validity of a CMS regulation (and policy). There are no pertinent factual issues in dispute.

### III. CONCLUSION

Based on the foregoing discussion and referenced documentation, the group representative hereby closes the BMH DSH § 1115 Waiver Days Group Appeals, PRRB Case Nos. 00-3588G, 05-0545G, 05-0544G, 06-0220G; submits jurisdictional documentation for each group appeal; and requests that the Board grant, within the thirty-day period mandated by the Medicare statute, the Hospitals' petition for EJR.

Very truly yours,

BENNETT BIGELOW & LEEDOM, P.S.

Sanford E. Pitler

SEP:KAT:jjp
Enclosures

cc (w/encls.):

Mr. Mike Shaver
Riverbend Government Benefits Administrator

Ms. Suzanne Cochran
December 9, 2005
Page 7

cc (w/o encls.):

    Mr. Wilson Leong
    Blue Cross Blue Shield Association

    Clients

    Kelly A. Thomas, Esq.
    Mr. James P. Parrott
    Bennett Bigelow & Leedom, P.S.

w:\wdclient\1789\00000\mm529631.doc