# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 12, 2008          Decided June 27, 2008

No. 07-5252

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED    JUN 27 2008

CLERK

COOKEVILLE REGIONAL MEDICAL CENTER, ET AL.,
APPELLANTS

v.

MICHAEL O. LEAVITT, SECRETARY OF THE UNITED STATES
DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01053)

———

No. 07-5269

BAPTIST MEMORIAL HOSPITAL, INC., ET AL.,
APPELLANTS

v.

MICHAEL O. LEAVITT, SECRETARY, UNITED STATES
DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
APPELLEE

2

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00437)

———

Murray J. Klein argued the cause and filed the briefs for appellants Cookeville Regional Medical Center, et al..

Sanford E. Pitler argued the cause for appellants Baptist Memorial Hospital, Inc., et al. With him on the briefs were Carol Sue Janes, Julie Quagliano Westemeier, and Michael C. Zisa.

August E. Flentje, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeffrey A. Taylor, U.S. Attorney, and Anthony J. Steinmeyer, Assistant Director.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge: These appeals from judgments of the district court raise common issues regarding application of the Deficit Reduction Act of 2005, Pub. L. 109-171 (2006). The cases were brought by two groups of Tennessee hospitals serving patients who participate in the state's Medicaid plan, TennCare. A Medicaid plan provides medical assistance to qualifying low-income individuals. 42 C.F.R. § 430.0; 42 U.S.C. § 1396 et seq. The federal government shares the cost of providing assistance if the state Medicaid plan meets the

3

regulations set out in subchapter XIX of the Social Security Act. *See* 42 U.S.C. § 1396a.

TennCare is a non-standard Medicaid plan known as a demonstration project. A demonstration project is a plan for which some of the regulations imposed on Medicaid plans under subchapter XIX are waived in order to "enable the states to try new or different approaches to the efficient and cost-effective delivery of health care services, or to adapt their programs to the special needs of particular areas or groups of recipients." 42 C.F.R. § 430.25; *see also* 42 U.S.C. § 1315. Despite not meeting the requirements of subchapter XIX, the costs of providing care under a demonstration project are treated as federally reimbursable expenditures made under subchapter XIX "to the extent and for the period prescribed by the Secretary [of Health and Human Services]."[1] 42 U.S.C. § 1315(a)(2)(A). TennCare provides medical assistance to Medicaid-eligible low-income individuals and select uninsured or uninsurable

---

[1] "In the case of any experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of subchapter I, X, XVI, or XIX of this chapter, or part A or D of subchapter IV of this chapter, in a State or States –

> costs of such project which would not otherwise be included as expenditures under section 303, 655, 1203, 1353, 1383, or 1396b of this title, as the case may be, and which are not included as part of the costs of projects under section 1310 of this title, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such subchapter, or for administration of such State plan or plans, as may be appropriate." 42 U.S.C. § 1315(a)(2)(A).

4

individuals who would not otherwise qualify for Medicaid.[2] This latter group of individuals who receive federally reimbursable care under TennCare despite not meeting the normal Medicaid requirements is known as the "expansion waiver population."[3]

The central issue in these cases is whether the expansion waiver population should be counted in determining a hospital's Medicaid reimbursement. At the end of each year, hospitals prepare cost reports seeking reimbursement for the treatment of Medicaid patients. 42 C.F.R. § 413.24(f). The cost reports are submitted to financial intermediaries, who report in a "notice of amount of program reimbursement" how much each hospital is owed from a state's Medicaid plan. 42 C.F.R. § 405.1803. The bulk of the reimbursement stems from the prospective payment system, under which a flat fee is paid for each day spent treating a Medicaid patient, based on the diagnosis or category of service provided. 42 U.S.C. § 1395ww; *see also* Fed. Trade Comm'n, *Improving Health Care: A Dose of Competition*, 31 J. HEALTH POL'Y & L. 437, 447 (2006). A hospital can supplement its reimbursement if it is eligible for one of several adjustments. One available adjustment is the disproportionate share hospital adjustment, which is given to hospitals serving a high percentage of low-income patients.

_____

[2] *See* Bureau of TennCare, *Overview*, available at http://www.state.tn.us/tenncare/news-about.html (visited May 13, 2008).

[3] *See also Medicare Inpatient Disproportionate Share Hospital Adjustment Calculation: Change in the Treatment of Certain Medicaid Days in States with 1115 Expansion Waivers*, 65 Fed. Reg. 3136, 3136 (Jan. 20, 2000) (noting that demonstration projects can expand coverage to otherwise Medicaid ineligible individuals).

A statutory formula determines whether the percentage of low-income patients a hospital treats qualifies it for a disproportionate share hospital adjustment and how much that adjustment should be. *See* 42 U.S.C. § 1395ww(d)(5)(F)(v). The disproportionate share percentage consists of the sum of two fractions. *Id.* § 1395ww(d)(5)(F)(vi). The second fraction – known as the Medicaid fraction – is the most pertinent to this case. The Medicaid fraction is derived by dividing "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX [of the Social Security Act]" by the "total number of a hospital's patient days for such period." *Id.*

Before January 2000, the Secretary's policy was not to include expansion waiver patients in the Medicaid fraction. Dep't of Health & Human Servs., *Program Memorandum Intermediaries*, Trans. No. A-99-62 (Dec. 1999). Despite this policy, some financial intermediaries included the expansion waiver population in the disproportionate share hospital adjustment. *Id.* The Secretary recognized this as a violation of the stated policy but did not attempt to recover the payments. *Id.* In January 2000, the Secretary revised the policy and permitted hospitals to include the expansion waiver population in the Medicaid fraction. 65 Fed. Reg. 3136, 3139. Three years later the Secretary issued another revision, excluding the expansion waiver populations associated with certain demonstration projects likely to deal with higher income individuals. *Proposed Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates*, 68 Fed. Reg. 27,154, 27,702 (May 19, 2003).

The plaintiff hospitals based their claims on cost reports submitted before the Secretary's policy change in January 2000. The hospitals filed their cost reports with financial

6

intermediaries and received notices of program reimbursement that did not take TennCare's expansion waiver population into account in calculating the disproportionate share hospital adjustment.    Each hospital appealed to the Provider Reimbursement Review Board, and lost.    *See* 42 U.S.C. § 1395oo(a). The hospitals then filed these suits, claiming that the Secretary had unlawfully refused to count TennCare's expansion waiver population in the disproportionate share hospital adjustment.

The district court granted the hospitals' motion for summary judgment, finding that the demonstration project provision and the disproportionate share hospital adjustment provision unambiguously required the Secretary to include the expansion waiver population in the Medicaid fraction. *Cookeville Reg. Med. Ctr. v. Thompson*, 2005 WL 3276219 (D.D.C. Oct. 28, 2005) (*Cookeville I*).    While this case was pending appeal, Congress passed the Deficit Reduction Act of 2005.[4]    The Act included a provision explicitly giving the Secretary discretion to determine whether to include a demonstration project's expansion waiver population in the disproportionate share calculation.    Deficit Reduction Act § 5002(a). The Act also purported to ratify the Secretary's prior policies regarding the inclusion or exclusion of the expansion waiver population. *Id.* § 5002(b)(3)(A), (B).

In light of these provisions, the Secretary moved to alter the judgment.  We remanded the case and the district court granted the Secretary's motion. *Cookeville Reg. Med. Ctr. v. Leavitt*, 2006 WL 2787831 (D.D.C. Sept. 26, 2006) (*Cookeville II*). The district court held that despite its view of the law before the Deficit Reduction Act, the Act constituted a valid retroactive

---

[4]Baptist Memorial's case was stayed pending the resolution of the Cookeville action.

7

change in the law. *Id.* at \*6-8. On that basis the court granted summary judgment in favor of the Secretary. Our review is *de novo. Taylor v. Rice,* 451 F.3d 898, 904 (D.C. Cir. 2006).

The hospitals make three points. The first is that the pre-Act law unambiguously required the inclusion of the expansion waiver patients in the disproportionate share hospital adjustment, leaving the Secretary with no discretion. The second is that the Act, which acknowledges the Secretary's discretion and ratifies the Secretary's earlier policies, was therefore a substantive change in the law. The third is that the Act cannot be applied retroactively consistent with *Landgraf v. USI Film Products,* 511 U.S. 255, 265 (1994), because Congress did not clearly indicate its intention to this effect.

Even if we agreed with the first two propositions, which we do not, we doubt the last. What is and what is not a retroactive application of the law is not always easy to discern. The Court's opinion in *Landgraf* indicates that a law has a retroactive effect if it "impairs [a] right[] a party possessed when he acted." *Id.* at 280. While that formulation seems simple enough, the Court discusses a host of exceptions that weaken the anti-retroactivity principle. *See, e.g., id.* at 273 (anti-retroactivity weakened in prospective relief cases), 275 (anti-retroactivity weakened in regard to procedural rules), 277 (anti-retroactivity does not apply when the ultimate outcome is foreseeable, explaining *Bradley v. Sch. Bd. of the City of Richmond,* 416 U.S. 696 (1974)). These exceptions, especially *Bradley,* tend to show that the presumption against retroactivity exists to protect settled expectations. *See also id.* at 265 ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.").

8

Here the hospitals could not have been certain of being reimbursed. The Secretary's policy during the relevant period was not to include the expansion waiver population in the disproportionate share hospital adjustment. 65 Fed. Reg. at 3136. Although some financial intermediaries were including the expansion waiver population, many (including those in Tennessee) were not. The hospitals were thus on notice that the expansion population might not be included.

In any event, we disagree with the hospitals' first proposition that the pre-Act law clearly required inclusion of the expansion waiver patients in the disproportionate share hospital adjustment. For this point, the hospitals draw most of their support from a Ninth Circuit opinion analyzing the relevant pre-Act statutes and determining that expansion waiver patients had to be included. *Portland Adventist Med. Ctr. v. Thompson*, 399 F.3d 1091 (9th Cir. 2005).[5] We believe the pre-Act law was not as clear as the Ninth Circuit thought it to be.

The Medicaid fraction incorporates patients who "were eligible for medical assistance . . . under a state plan approved under subchapter XIX." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Social Security Act sets out the requirements for a patient to be eligible for medical assistance. 42 U.S.C. § 1396d(a). The expansion waiver population does not meet these criteria – generally because their incomes are too high. Likewise, demonstration projects are state plans approved under subchapter XI, not subchapter XIX.

---

[5] The hospitals could hardly claim that their actions were taken in reliance on *Portland Adventist*. They were operating outside the jurisdiction of the Ninth Circuit and the *Portland Adventist* opinion was published several years after the last of the fiscal years involved in this case.

9

The hospitals say that expansion waiver patients must be treated as eligible for medical assistance because they receive a Medicaid benefit when the hospitals are reimbursed by Medicaid for their care. This argument stems from the language providing that the costs of a demonstration project "shall" be regarded as expenditures under subchapter XIX. *See* 42 U.S.C. § 1315(a)(2)(A). The statute, however, modifies the "shall" by indicating that the costs are only treated as Medicaid expenditures "to the extent and for the period prescribed by the Secretary." *Id.* While this clearly gives the Secretary control over the duration of the demonstration project, the language may do more. Plausibly, the "to the extent" language is a grant of discretion to the Secretary to determine which costs or how much of the costs are to be treated as expenditures.[6] Under this reading, the Secretary would have discretion to limit a hospital's reimbursement for the expansion waiver population, rather than permitting the hospital to seek the disproportionate share hospital adjustment. This interpretation finds some support in the Deficit Reduction Act. No one contests that § 5002(a) of the Act gives the Secretary discretion (at least prospectively) to exclude the expansion waiver population. In conferring this discretion, Congress relied on the "to the extent and for the period" language used in § 1315 regarding the demonstration projects, albeit in a different context. Deficit Reduction Act § 5002(a). Additionally, the Secretary acted as though the statute granted discretion to decide how to treat the expansion waiver population. The Secretary chose to issue policies rather than regulations and to base them on practical concerns instead

---

[6] The House and Senate reports discussing § 1315 lend support to this reading. Both stated that the costs of demonstration projects "could be included, for purposes of such participation, as expenditures under . . . the State plan approved under any of such titles, but only for the period and to the extent prescribed by the Secretary." S. Rep. 87-1589, at 31 (1962); H.R. Rep. 87-1414, at 35 (1962).

10

of statutory constraints. *See, e.g., Program Memorandum Intermediaries*, Trans. No. A-99-62; 65 Fed. Reg. at 3136.

These considerations lead us to conclude that it was unclear, prior to the Deficit Reduction Act, whether the Secretary had discretion to exclude the expansion waiver population from the disproportionate share hospital adjustment. It follows that there is no problem of retroactivity. The Deficit Reduction Act did not retroactively alter settled law; it simply clarified an ambiguity in the existing legislation. *See* Deficit Reduction Act § 5002(a).[7] In doing so, Congress ratified the Secretary's earlier policies, "including the policy . . . regarding discharges occurring prior to January 20, 2000," to emphasize that the Secretary always had this discretionary authority. *Id.* § 5002(b)(3)(A).[8]

*Affirmed.*

---

[7] *See Brown v. Thompson*, 374 F.3d 253, 257-60 (4th Cir. 2004); *Pimba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1283-84 (11th Cir. 1999); *Beverly Comm. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir. 1997); *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992).

[8] Because the Act resolves an ambiguity in the law, there is nothing to the hospitals' claim that the Act violates the Due Process Clause. *See Beverly Comm.*, 132 F.3d at 1267.